IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTHUR B. CALDERON,

        Plaintiff,

    v.

DELVALLE DEZI, et al.,

        Defendants.

Case No. 2:17-cv-01625-JR

**OPINION AND ORDER**

**RUSSO, Magistrate Judge**:

    Pro se Plaintiff Arthur B. Calderon, an inmate at the Snake River Correctional Institution (SRCI), brings this civil rights action against Defendants Deziderio Delvalle,[1] a hearings officer at SRCI, and Melissa Nofziger, an assistant inspector general for the Oregon Department of Corrections (ODOC). Plaintiff alleges that Defendants violated his substantive and procedural due process rights when he was sanctioned for his role in the assault of another inmate.

    The parties have filed cross-motions for summary judgment. For the following reasons, I grant Defendants' motion and deny Plaintiff's motion.

---

[1] The Complaint refers to this Defendant as "Delvalle Dezi." Compl. 1, ECF No. 2.

1  –  OPINION AND ORDER

## BACKGROUND

On May 17, 2017, at about 9:20 p.m., inmate Manuel Camas-Carroll[2] unilaterally assaulted inmate Leonel Zamora in a day room at SRCI. Delvalle Decl., Ex. 2, at 5 (misconduct report), ECF No. 38. A report completed on the day of the assault stated:

> It was reported to me that Inmate Camascarrol, Manuel had exited his cell (3A01A) at the 9:20 PM line movement and ran over to the phone area where Inmate Zamora, Leonel from 3A22B was standing talking on the phone. Inmate Camascarrol then started striking Inmate Zamora in the facial area with closed fist until he knocked him to the floor. Inmate Camascarrol then started kicking and jumping on Inmate Zamora's chest and head area with both feet, by jumping into the air and landing on the side of Inmate Zamora [*sic*] head.
>
> As the response team entered unit 3A, Inmate Camascarrol picked up a chair sitting in the day room and was hitting Inmate Zamora several times. Sergeant Johnson gave multiple orders to stop his assaultive behavior or chemicals would be used, Inmate Camascarrol continued to hit Inmate Zamora with the chair.

Delvalle Decl., Ex. 2, at 13 (report by Lt. Jerry Mordhorst) (inmate identification numbers omitted). Medical staff determined that Zamora had suffered "multiple abrasions to his head, chest, arms and back area with bruising and swelling." *Id.* Camas-Carroll did not report any injuries.

In a misconduct report on Plaintiff dated June 6, 2017, Lt. Mordhorst stated that an investigation determined that Camas-Carroll and Zamora were members of the Surenos Security Threat Group (Surenos), and that the assault was "a form of internal punishment." Delvalle Decl., Ex. 2, at 5. The investigation found that Plaintiff, who was considered a leader of the Surenos, had conspired with inmate C. Russell, a "sergeant" with the Surenos, to have Camas-Carroll assault Zamora. *Id.* Based on the investigation, ODOC officials charged Plaintiff with violating Inmate Assault I, Rule 2.05, and Unauthorized Organization I, Rule 4.5.

Rule 2.05 on Inmate Assault provides:

An inmate commits Inmate Assault I if he/she:

(A) 2.05.01 Causes serious physical injury to another inmate or causes injury to

---

[2] Several reports in the record refer to "Camascarrol," but that is not how Camas-Carroll himself spells his name. Camas-Carroll Decl. 1, ECF No. 43.

> an inmate that requires staff transporting the inmate to an outside agency for medical care; or
>
> (B) 2.05.02 Causes physical injury to another inmate and uses a dangerous or deadly weapon; or
>
> (C) 2.05.03 Commits a unilateral attack in a location or under circumstances which creates a threat to the safety, security, or orderly operation of the facility, such as the dining hall or the recreation area . . . .

Or. Admin. R. 291-105-0015(2)(c). Rule 4.45 on Unauthorized Organization provides, "An inmate commits Unauthorized Organization I if he/she involves himself/herself with a group of two or more persons, whether formal or informal, and who collectively or in concert creates or actively promotes, recruits, participates in or involves himself/herself in security threat activity." Or. Admin. R. 291-105-0015(4)(q). Violations of either rule may result in sanctions of up to 120 days in the Disciplinary Segregation Unit, up to 28 days' loss of privileges, a maximum fine of $200, and a time reduction. Delvalle Decl., Ex. 3, at 28 (Major Violations Grid).

A disciplinary hearing on the charges was set for June 9, 2017. On June 8, 2017, Plaintiff submitted a witness list. Delvalle Decl., Ex. 2, at 41. Plaintiff sought to call Camas-Carroll, Zamora, and Russell, and proposed asking them, "Did I have anything to do with the assault on Inmate Zamora." *Id.* Plaintiff also sought to call two correctional officers as character witnesses, asking them "did you see [Plaintiff] working and staying out of trouble and programming on mainline." *Id.* He also sought to call two staff members from the prison call-center as character witnesses, to ask whether he had told them "how serious he was at working and staying out of trouble." *Id.*, Ex. 2, at 42.

At the hearing, Plaintiff acknowledged that he had received and understood the Notice of Rights, Notice of Hearing, and Rules of Prohibited Conduct for the charges against him. Delvalle Decl., Ex. 4, at 1 (transcript of disciplinary hearing). Plaintiff pleaded not guilty to the charged rule violations. *Id.*

At the outset of the disciplinary hearing, Delvalle noted that he had confidential information he could not share with Plaintiff because "it might . . . create a threat to the safety and

3   –   OPINION AND ORDER

security of the institution." *Id.*[3] Delvalle then stated that the investigation determined Camas-Carroll assaulted Zamora "as a form of internal punishment from the Surenos STG." *Id.*, Ex. 4, at 2. Delvalle stated that the investigation also determined that Plaintiff was a "documented leader" of the Surenos, and that he had conspired with Russell to have Camas-Carroll assaulted. *Id.*

Delvalle stated that during the investigation, a corrections officer asked Plaintiff whether he was one of only three inmates who could have ordered the assault on Zamora. Plaintiff "explained that [he] was good and [was] not trying to be in the politics anymore." *Id.*, Ex. 4, at 4. When the corrections officer had asked Plaintiff to explain that statement, Plaintiff responded, "I have had the keys in the past but I am trying to separate from this role. I keep getting pulled back in and having to make decisions for my group because of who I am." *Id.* Delvalle added that the corrections officer believed that Plaintiff "had approved the assault in 3A and that it could not have happened without your approval." *Id.* Delvalle also stated that he had information that Plaintiff's nickname was "Capone." *Id.*

Delvalle rejected Plaintiff's request to call the inmate witnesses. Delvalle explained that the evidence, including confidential information,

> directly point[s] to [Plaintiff] as the key holder and headshot caller for the Surenos Threat Group. And these other three inmates potentially acted on [*sic*] concert with you to organizing this assault. Asking them if they had anything to do with it, or if you had anything to do with it, chances are they're gonna tell me no. Because they're gonna tell me they didn't have anything to do with it, either. So, I believe that without having to ask them, they're gonna tell me you didn't have anything to do with it.

*Id.*, Ex. 4, at 5-6.

Delvalle also rejected Plaintiff's request to call staff members as character witnesses, telling Plaintiff, "As to whether or not they saw or had any involvement and knowledge about you ordering an assault on this inmate Zamora, I don't know that they would have any of that information, so it would be pointless for me to ask them about character." *Id.*, Ex. 4, at 6.

---

[3] Defendants have submitted the confidential reports under seal as Exhibit 5 to the Delvalle Declaration.

Delvalle noted that Plaintiff could "be the shot caller of the group and behave perfectly correctly." *Id.*

Plaintiff testified that although he had been in a fight about a year ago, "since then, I've decided that this is a bunch of kid's stuff. It's not, you know, I don't want no part of this no more. . . . . I'm 50 years old. I'm fighting these kids, 30, you know, and so I just decided with myself, I'm gonna get a job." *Id.,* Ex. 4, at 7.

Delvalle questioned whether Plaintiff, as a Surenos leader, could "just walk[] away and say[], hey guys, thanks for the fun, but I'm done," without any repercussions to Plaintiff. *Id.*, Ex. 4, at 13. Delvalle told Plaintiff that he had information that was "pretty damning. Then I combine that with the confidential information that I have received, and it tells me you were still the key holder, and you sanctioned this assault, okay?" *Id.*, Ex. 4, at 16. Delvalle told Plaintiff that in his opinion, it was "more likely than not" that Plaintiff was involved in the assault of Zamora. *Id.*, Ex. 4, at 17.

Delvalle found Plaintiff was guilty of violating Rule 2.05, Inmate Assault I, for conspiring to have Zamora brutally assaulted, and of violating Rule 4.5, Unauthorized Organization I. Delvalle recommended a sanction of 180 days in disciplinary segregation, based on 120 days plus a 50% upward deviation, 28 days' loss of privileges, 41.1 days retracted earned time, a $100 fine, and an additional $100 fine that would be suspended if Plaintiff did not commit any major rule violations. Delvalle Decl., Ex. 2, at 2-3. Delvalle stated that the upward deviation was justified because (1) the assault caused the institution to be put on lockdown; (2) the assault caused staff members to be called from other areas; and (3) the assault involved the use of a chair as a weapon and an inmate "stomping on the head of the other inmate." *Id.,* Ex. 2, at 2.

Plaintiff sought administrative review of his formal hearing. By letter dated July 7, 2017, Nofziger notified Plaintiff that Delvalle's findings were affirmed. Nofziger stated that Delvalle's ruling was in "substantial compliance" with the rule governing Prohibited Inmate Conduct, and that "the finding was based upon a preponderance of the evidence and the sanction imposed was in

accordance" with ODOC rules. Delvalle Decl., Ex. 6, at 1.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). When parties file cross-motions for summary judgment, the court considers "each motion on its merits." *American Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1043 (9th Cir. 2014).

## DISCUSSION

### I. Plaintiff's Claims Against Hearings Officer Delvalle

Here, Plaintiff alleges that Delvalle violated his right to procedural due process by denying his request for witnesses to testify at the disciplinary hearing. Plaintiff also alleges that Delvalle violated his substantive due process rights by finding him guilty of violating ODOC's rules. Delvalle is entitled to summary judgment on both claims.

#### A. Procedural Due Process Claim

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To comply with due process requirements during inmate disciplinary proceedings, prison officials must provide an inmate with: (1) written notice of the charges; (2) some time following the notice to prepare a defense; (3) a written decision by the fact-finder; (4) the opportunity to call witnesses and present documentary evidence in his defense when consistent with institutional safety and correctional goals; and (5) assistance from staff or other inmates if the inmate is illiterate or if the case is extremely complex. *See Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974); *Baker v. Daniels*, No.

Civ. 04-969-TC, 2005 WL 387128, at *2 (D. Or. Feb. 15, 2005) (summarizing *Wolff*'s requirements).

An inmate has a right to call witnesses at a disciplinary hearing to "marshal the facts and present a defense." *Wolff*, 418 U.S. at 564. But an inmate's right to call witnesses is not unlimited. "[T]here is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Piggie v. Cotton*, 344 F.3d 674, 677 (9th Cir. 2003). The inmate's interest in presenting witnesses must be weighed against "the needs of the prison, and some amount of flexibility and accommodation is required." *Wollf*, 418 at 566.

Delvalle did not violate Plaintiff's procedural due process rights when he denied Plaintiff's request to call witnesses. Delvalle concluded that Plaintiff's right to call inmate witnesses was outweighed by security concerns. Delvalle "properly determined that disclosing the informants' identities to plaintiff would endanger the informants." *Martin v. Williamson*, No. 2:12-cv-1916-CL, 2014 WL 4983660, at *2 (D. Or. Oct. 3, 2014).

In deciding to deny testimony from Plaintiff's character witnesses, Delvalle could properly conclude that such testimony was unnecessary and irrelevant. Addressing similar facts, this court has held, "The requested character witnesses were not witnesses to the alleged extortive activity; they were offered to speak generally about plaintiff's character. In these circumstances, federal courts have consistently ruled that an inmate's procedural due process rights are not violated when a request to call such witnesses was denied." *Martin*, 2014 WL 4983660, at *2 (citing *Oswalt v. Godinez*, 894 F. Supp. 1181, 1187 (N.D. Ill.1995)).

### B. Substantive Due Process Claim

Plaintiff alleges that his due process rights were violated by Delvalle's ruling. "Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). "[T]o establish a constitutional violation based on substantive due process, [a plaintiff] must show both a deprivation of her liberty and conscience-shocking behavior by the government." *Id.* Substantive due process requires only that

"some evidence" supports a prison disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). When a hearings officer bases findings in a disciplinary hearing on the statements of unidentified informants, due process requirements are satisfied if: "(1) the record contains some factual information from which the [officer] can reasonably conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. Review of both the reliability determination and the safety determination should be deferential." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir.1987). Reliability may be established by: (1) the oath of the investigating officer as to the truth of the report that contains confidential information; (2) corroborating testimony; (3) a statement on the record by the hearings officer that he had first hand knowledge of the sources of information and considered them reliable based on the informant's past record; and (4) an in camera review of the documentation from which the reliability is assessed. *Id.*

I conclude that Delvalle's rulings were supported by "some evidence." After an in camera review, I find that Delvalle properly considered the confidential information, together with the other evidence, which indicated Plaintiff remained a leader of the Surenos and had ordered the assault. Plaintiff has not shown the disciplinary proceeding violated his due process rights.

Plaintiff submits a declaration from Camas-Carroll, the inmate who assaulted Zamora. Camas-Carroll states that Plaintiff "is not the leader of Surenos nor was he involved with any prison politics." Camas-Carroll Decl. 1, ECF No. 43. Camas-Carroll also states, "nobody told me to do anything." *Id.* I find that Camas-Carroll's declaration does not create a disputed issue of material fact precluding summary judgment for Delvalle.

## II. Plaintiff's Claim Against Nofziger

Plaintiff alleges that Nofziger violated his right to due process when she determined Delvalle complied with the applicable rules and made findings based on a preponderance of the evidence. Plaintiff concedes that Nofziger "did not commit the due process violations," but argues that "she became responsible for them when she [failed] to correct them in the course of her

supervisory responsibilities." Pl.'s Brief In Support 8, ECF No. 18 (unpaginated document). Defendants respond that Nofziger cannot be liable in her role as the supervisor of the disciplinary process. I agree.

An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists "between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Here, Plaintiff does not allege that Nofziger did more than deny his appeal from Delvalle's ruling, so Plaintiff has not shown that Nofziger had any personal involvement in the alleged violations of his rights. In any event, because "'inmates lack a separate constitutional entitlement to a specific grievance procedure,'" a defendant "cannot be held liable under § 1983 for denying [a plaintiff's] appeal." *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (quoting *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)). I conclude that Nofziger is entitled to summary judgment.

### III. Qualified Immunity As To Damages Claims

Defendants contend they are entitled to qualified immunity from Plaintiff's damages claims. "Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066-67 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In ruling on qualified immunity, the court asks "(1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Here, even if Plaintiff could show a violation of his constitutional rights, reasonable officials in Defendants' positions would not have known that the procedures used in Plaintiff's disciplinary hearing were unlawful. I conclude that Defendants are entitled to qualified immunity from Plaintiff's damages claims.

**IV. Plaintiff's Motion for Summary Judgment**

Plaintiff's Motion for Summary Judgment is denied for the same reasons that I grant Defendants' Motion for Summary Judgment. I note that in his declaration, Plaintiff states that after the assault, he "was not given any disciplinary charges nor given notification of a hearing for 23 days." Pl.'s Decl. ¶ 2, ECF No. 18. Because the 180-day sanction commenced as of the day of his initial move to administrative segregation, Plaintiff did receive credit for the 23 days. Defs.' Resp. 2 n.1, ECF No. 41.

Plaintiff's complaint does not plead a claim based on the 23 days in administrative segregation before the disciplinary hearing. Even if Plaintiff had pleaded such a claim, it would fail because neither Defendant was personally involved in placing Plaintiff in administrative segregation. And even if one or both Defendants were personally involved, Plaintiff has no due process interest in being free from administrative segregation for 30 days or less. *See Jones v. Taylor*, 2:17-cv-01031-BR, 2018 WL 4473578, at *6 (D. Or. Sept. 18, 2018) (inmate could not state due process claim based on 30-day assignment to administrative segregation because Or. Admin. R. 291-046-0014 allows inmates to be "involuntarily assigned to administrative housing for a period not to exceed 30 days without a hearing").

## CONCLUSION

Defendants' Motion for Summary Judgment, ECF No. 37, is GRANTED. Plaintiff's Motion for Summary Judgment, ECF No. 17, is DENIED.

IT IS SO ORDERED.

DATED this 1st day of October, 2018.

/s/ Jolie A. Russo

JOLIE A. RUSSO
U.S. MAGISTRATE JUDGE